IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


WILLIAM M. NOBLES and      )
RONNIE HALES,              )
                           )
     Plaintiffs,           )
                           )       CIVIL ACTION NO.
     v.                    )        1:00cv375-MHT
                           )           (WO)
RURAL COMMUNITY INSURANCE  )
SERVICES,                  )
                           )
     Defendant.            )


OPINION AND ORDER

This case has been described as having a "convoluted procedural history."  Nobles v. Rural Cmty. Ins. Servs., 303 F.Supp.2d 1279, 1280 (M.D. Ala. 2004) (Thompson, J.). It is now before the court on plaintiffs William M. Nobles and Ronnie Hales's motion to vacate this court's order taxing costs against them.  The question presented is whether plaintiffs who prevail in court-ordered arbitration but against whom summary judgment is granted

on their remaining non-arbitrable claims must pay the defendant's costs for transcripts of the arbitration hearing and depositions taken in advance thereof. In this case, the court concludes that Nobles and Hales were properly taxed those costs and that their motion to vacate should be denied.


## I. BACKGROUND

Because this court granted summary judgment in favor of defendant Rural Community Insurance Services (RCIS), the facts of this case will be described, as they were considered by this court, in the light most favorable to Nobles and Hales.

In 1999, Nobles and Hales were Alabama residents who decided to plant cotton in Florida. Before planting the crop, they contacted RCIS, an insurance company, regarding the possibility of purchasing crop insurance. RCIS told Nobles and Hales that, because their land was not listed as uninsurable in the actuarials published by the Federal Crop Insurance Corporation, there would be no reason for

2

it to be uninsurable.  Based on RCIS's assurances, Nobles
and Hales purchased insurance and planted 7,787 acres of
cotton.

During the course of inspecting the crop, RCIS
determined that some of the acreage might not be insurable
because it had not been planted and harvested in one of
the previous three crop years, thus making it ineligible
for insurance under the terms the insurance policy.  RCIS
did not tell Nobles and Hales about its discovery,
however.

The crop failed due to drought.  RCIS then informed
Nobles and Hales that 4,990 of their 7,787 acres were
uninsurable under the one-in-three provision of their
policy.  RCIS therefore denied coverage on that acreage.

In response, Nobles and Hales filed this lawsuit in
state court.  They brought six state-law claims: breach of
contract, misrepresentation, suppression, bad faith,
negligent and wanton distribution of information via
agency, and negligent and wanton supervision of agents.
They sought compensatory and punitive damages as well as

3

interest and costs.  Invoking diversity jurisdiction, 28 U.S.C. § 1332, RCIS removed the case to federal district court, 28 U.S.C. § 1441.

This court found that the parties' insurance contract required them to submit to binding arbitration before pursuing their claims in federal court.  Nobles v. Rural Cmty. Ins. Servs., 122 F.Supp.2d 1290 (M.D. Ala. 2000) (DeMent, J.).  The court concluded that an arbitration panel must decide the factual question of whether the 4,990 acres in dispute were covered by the insurance policy.  The arbitration panel would be permitted to award relief as permitted by federal statutes and regulations. Nobles and Hales would then be permitted to pursue their state-law claims, subject to whatever preclusive effect was due the arbitrators' findings and awards. Accordingly, the court entered an order staying this action and compelling arbitration.

In 2001, an arbitration panel heard evidence and found that all 7,787 acres were covered under the insurance policy.  The arbitrators ordered RCIS to pay Nobles and

4

Hales damages, plus interest, in the amount of all remaining unpaid indemnities under the policy. The arbitrators further awarded Nobles and Hales any fees that they paid to the arbitrators, though they denied Nobles and Hales all other fees, costs, and expenses associated with the case.

Following their victory in arbitration, Nobles and Hales moved to lift the stay so that they could seek further relief on their remaining state-law claims against RCIS. Their motion was granted and this case was reinstated to this court's active docket. Several additional procedural complications arose which need not be recounted here except to note that Nobles and Hales were permitted to amend their complaint to add claims against RCIS. The parties filed cross-motions for summary judgment, and, in 2004, the court granted summary judgment in favor of RCIS and against Nobles and Hales. <u>Nobles v. Rural Cmty. Ins. Servs.</u>, 303 F.Supp.2d 1292 (M.D. Ala.) (Thompson, J.), <u>aff'd</u>, 116 Fed. Appx. 253 (11th Cir. 2004) (table).

5

In ruling on summary judgment, this court found that the arbitrators' central findings had preclusive effect on the instant litigation. That is, RCIS would not be permitted to relitigate the issues of whether all 7,787 acres of land claimed by Nobles and Hales were insurable and that it owed coverage under the insurance policy. Nobles and Hales had prevailed in arbitration on their basic claim for coverage; the only issues before the district court were the state-law claims for additional damages that arose out of the parties' initial insurance dispute.

Turning to the merits, this court concluded summary judgment was due to be granted on Nobles and Hales's remaining state-court claims. First, the court rejected Nobles and Hales's breach-of-contract claim: Nobles and Hales had been made whole by the arbitration award. Second, the court rejected their claims for fraud and for negligent or wanton training: those claims were based on the assumption that RCIS improperly sold Nobles and Hales an insurance policy on uninsurable land, whereas the

6

arbitration panel had found that all 7,787 acres were in fact insurable.  Third, the court rejected the claims for suppression of a material fact and negligence and wantonness: those claims were based on RCIS's failure to inform Nobles and Hales of the one-in-three provision in their insurance policy, and the court held that they were charged with notice of the content of their policy. Fourth, the court rejected the claim for bad faith: although the arbitrators ultimately found that RCIS was incorrect in its determination that 4,990 acres were uninsurable, RCIS had presented arguable reasons for having denied Nobles and Hales's insurance claim. Accordingly, this court entered summary judgment in favor of RCIS on Nobles and Hales's state-law claims.  Of course, this court did not disturb the arbitration award in Nobles and Hales's favor.

In entering summary judgment, this court followed its standard practice in "further order[ing] that costs are taxed against the plaintiffs Nobles and Hales, for which execution may issue." J. (doc. no. 89) at 2.  Thirty days

**7**

later, RCIS filed an itemized bill of costs for $ 3,231.00. This amount consisted of $ 1,878.00 for transcripts of six depositions taken before the arbitration hearing and $ 1,353.00 for transcripts of the arbitration hearing itself. The following day, the clerk of the court signed the bill of costs, thereby incorporating the bill against Nobles and Hales. Five days later, Nobles and Hales filed the pending motion to vacate.

## II. DISCUSSION

The taxation of costs that normally accompanies final judgment is governed by Rule 54(d)(1) of the Federal Rules of Civil Procedure: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." After final judgment is entered and a verified bill of costs filed, the initial responsibility for taxing costs lies with the clerk of the

court.   10 James Wm. Moore, Moore's Federal Practice
§ 54.100[2], at 54-143 (3d ed. 2006).   If the party
against whom costs are taxed objects within five days,
then the district court must conduct a de novo review.
Id. § 54.100[3], at 54-145 (citing Farmer v. Arabian Am.
Oil Co., 379 U.S. 227, 233 (1964)); see also Laura B.
Bartell, Taxation of Costs and Awards of Expenses in
Federal Court, 101 F.R.D. 553, 560 (1984).

As the rule states, costs are ordinarily awarded to
the prevailing party.   Fed. R. Civ. P. 54(d)(1).   The
'prevailing party' is generally "the party in whose favor
judgment was entered, even if the judgment does not fully
vindicate the litigant's position in the case."   Moore,
supra, § 54.101[3] at 54-159; see Head v. Medford, 62 F.3d
351, 355-56 (11th Cir. 1995) (defendants are prevailing
parties for purposes of Rule 54(d) where summary judgment
is granted in their favor on federal claims and state
claims are dismissed without prejudice).   Rule 54(d)
"establishes a presumption that costs are to be awarded to
a prevailing party, but vests the district court with

9

discretion to decide otherwise." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc); <u>see also</u> 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice & Procedure</u> § 2668, at 227 (3d ed. 1998) (describing the awarding of costs to the prevailing party as "not a rigid practice"); <u>United States v. Terminal Transp. Co.</u>, 653 F.2d 1016, 1022 n.13 (5th Cir. Aug. 21, 1981)[*] ("Even when a plaintiff fails to prevail in any respect ... the district court may decline to award costs to the defendants."). If the court exercises its discretion to deny costs to the prevailing party, it must provide its reasons for doing so. <u>Gilchrist v. Bolger</u>, 733 F.2d 1551, 1557 (11th Cir. 1984).

---

[*] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## A. Notice

The court will first consider whether the clerk gave
Nobles and Hales adequate notice before taxing costs
against them.  According to Rule 54(d)(1), "such costs may
be taxed by the clerk on one day's notice."  In this case,
RCIS filed its bill of costs on March 24 and the clerk
taxed costs on March 25.  Nobles and Hales argue that,
because RCIS's bill of costs was served by mail on March
23, they did not have notice until March 26, and the clerk
of the court erred in taxing costs against them before
they had an opportunity to object.

There is some authority to support Nobles and Hales's
position.  According to the Federal Rules of Civil
Procedure, "Whenever a party must or may act within a
prescribed period after service and service is made [by
mail], 3 days are added after the prescribed period would
otherwise expire...."  Fed. R. Civ. P. 6(e).  Thus, under
Rule 6(e), the clerk of the court was required to wait
four days, not one, before taxing costs.  Moore, supra,

11

§ 54.100[2] at 54-143; <u>United States v. Carson</u>, 52 F.3d 1173, 1190 (2d Cir. 1995).

The court need not decide whether, as the Second Circuit Court of Appeals states in <u>Carson</u>, Rule 6(e) applies to the one-day notice provision in Rule 54(d)(1) for a bill of costs served by mail. Even if the clerk acted prematurely in taxing costs on March 25, it is difficult to see how Nobles and Hales were prejudiced by such error. Nobles and Hales had the opportunity to object to the taxation of the costs, which they did; and this court's standard of review on their objection is <u>de novo</u>. In <u>Carson</u>, the district court had a local rule confiding the taxation of costs to the "discretion" of the clerk; the <u>Carson</u> court instructed that, because of the clerk's error, the district court must either remand the determination of costs to the clerk for reconsideration in light of the objections or simply entertain those objections <u>de novo</u> rather than under an abuse-of-discretion standard. <u>Carson</u>, 52 F.3d at 1190. In this case, by contrast, there is no such local rule, and the

court considers the objection <u>de novo</u> regardless of
whether the clerk has received and considered the
objection in the first instance.  Therefore, if the clerk
committed a timing error in taxing costs, the error was
harmless.

## B. Discretion to Deny Costs

"The presumption that the prevailing party is entitled
to costs must be overcome by some showing that an award
would be inequitable under the circumstances.  The losing
party bears the burden of making this showing."  Moore,
<u>supra</u>, § 54.101[1][b] at 54-152.  The court is unaware of
any reported decision involving a defendant who sought and
obtained a stay pending arbitration, lost the arbitrated
claim, won the remaining non-arbitrable claims, and then
sought to tax plaintiffs the costs incurred during the
stay and in connection with the arbitration.  Thus, the
court cannot look to case law for guidance regarding this
particular scenario.  However, courts typically employ a
case-by-case approach in considering objections under Rule

13

54(d)(1).  Wright, Miller & Kane, supra, § 2668 at 231.
In  examining  RCIS's  bill  of  costs  in  light  of  Rule
54(d)(1) and the circumstances of this particular case,
the  court  concludes  that  Nobles  and  Hales  have  not  met
their  burden  of  demonstrating  the  inequity  of  awarding
RCIS costs under the circumstances.

     The  court  bases  its  decision  on  two  considerations.
First, even though Nobles and Hales recovered damages from
RCIS  in  arbitration,  it  is  clear  that  RCIS  is  the
prevailing  party  in  this  case.   Nobles  and  Hales  gained
nothing  in  this  litigation.   The  parties'  contract
required  them  to  submit  to  binding  arbitration  on  their
insurance claim, and RCIS was successful in its motion to
compel  arbitration.   RCIS  subsequently  obtained  summary
judgment  in  its  favor  on  each  of  Nobles  and  Hales's
claims.   In  the  absence  of  this  litigation,  Nobles  and
Hales would be in the same position.   Therefore, although
Nobles  and  Hales  may  have  prevailed  in  arbitration,  they
are  certainly  not  the  prevailing  parties  in  this  case.

Second, because RCIS is the prevailing party, the question is whether the transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920; see Mathews v. Crosby, 480 F.3d 1265, 1276-77 (11th Cir. 2007); Blevins v. Heilig-Meyers Corp., 184 F.R.D. 663, 666 (M.D. Ala. 1999) (Thompson, J.). To answer this question, the court first inquires as to whether the transcripts were obtained solely for use in the arbitration proceeding or were obtained for use in both the arbitration proceeding and in the court proceeding. If they were obtained solely for use in the arbitration proceeding, then an argument could be made that only the arbitration panel could determine whether these costs are recoverable, for it would be clear that, at the time they were obtained, the parties did not view them as "reasonably necessary for use" in the court case. Hudson v. Nabisco Brands, Inc., 758 F.2d 1237, 1243 (7th Cir. 1985), overruled on other grounds, Provident Bank v. Manor Steel Corp., 882 F.2d 258 (7th Cir. 1989); see also Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1458 (M.D. Ala. 1997)

(Thompson, J.), aff'd, 162 F.3d 98 (11th Cir. 1998) (table).  If the transcripts were obtained for use in both the arbitration proceeding and in the court proceeding, however, then there would be a foundation for concluding that, at the time these costs were incurred, RCIS viewed them as reasonably necessary for the court case. Discovery is often taken for use in separate parallel legal forums, and there is no reason why a party could not recover costs for its use of a transcript in one of the forums so long as the transcript was reasonably necessary for use in that forum and the party prevailed in that forum (assuming there is no double recovery on account of costs recovered in the other forum).

Here, the court concludes that, at the time the depositions were taken and at the time the transcripts were ordered, RCIS intended them for use in the court proceeding as well as in the arbitration proceeding.  The fact that the court proceeding was stayed does not foreclose this intent, for the court and the parties understood that after the arbitration proceeding Nobles

and Hales could return to court to litigate the non-arbitrable claims. The court also concludes that the transcripts were reasonably necessary for use in this court case. Nobles and Hales's non-arbitrable claims arose out of the same dispute that was before the arbitration panel, so it stands to reason that the deposition and hearing testimony connected to the arbitration proceeding would be relevant to the court proceeding as well.

In sum, the court finds it entirely credible that RCIS, reasonably anticipating that Nobles and Hales would reinstate their lawsuit on the non-arbitrable claims, created a record, through testimony in depositions and at the arbitration hearing, that would support summary judgment in its favor on those claims. Summary judgment having been granted, this case is not well-suited for the court to exercise its discretion under Rule 54(d)(1) to decline costs to the prevailing party.

17

Accordingly, it is ORDERED that plaintiffs William M. Nobles and Ronnie Hales's motion to review and vacate the order of the clerk taxing costs (doc. no. 92) is denied.

DONE, this the 1st day of June, 2007.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE